UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CA 08 346
#

MARIANO JIMENEZ

v.

A.T. WALL et, al.

WRIT OF HABEAS CORPUS
----U.S.C. 2254.------

Now Comes, the (PETITIONER), Mariano Jimenez, and states that he is curruntly unlawfully restrained in the custody of the (RESPONDANT) A.T. Wall, based on unconstitutional violations concerning the trial justices failure to instruct the jury on lesser included offense charges.

In support is memorandum of law, travel/facts and two motions:

1) Appointment of counsel.
2) Release pending bail.

Respectfully:,
[signature] 9/4/08
Mariano Jimenez
Box 8274
ACI Maximum
Cranston, R.I. 02920

OTHER RELEVANT CASES IN SUPPORT.

## CONSTITUTIONS, STATUTES AND RULES


R.I. Rule of Evidence 404(b) ..........

R.I.G.L. 1956 (2000 Reenactment) § 12-17-14 ..........

Rule 31(c) of the Superior Court Rules of Criminal Procedure..........


## UNITED STATES SUPREME COURT CASES


*Coffin v. United States*, 156 U.S. 432 (1895)..........

*Keeble v. United States*, 412 U.S. 205 (1973) ..........


## OTHER FEDERAL CASES


*Driscoll v. United States*, 356 F.3d 324 (1st Cir. 1966)..........

*United States v. Comer*, 421 F.2d 1149 (D.C. Cir. 1970)..........

*United States v. Whitaker*, 447 F.3d 314 (D.C. Cir. 1971)..........


## RHODE ISLAND CASES


*State v. Amazeen*, 526 A.2d 1268 (R.I. 1987)..........

*State v. Aurgemma*, 116 R.I. 425, 358 A.2d 46 (1976)..........

*State v. Beaulieu*, 116 R.I. 575, 359 A.2d 689 (1979)..........

*State v. Brash*, 512 A.2d 1375 (R.I. 1986)..........

*State v. Brown*, 626 A.2d 228 (R.I. 1993)..........

*State v. Brown*, 744 A.2d 831 (R.I. 2000)..........

*State v. Burke*, 427 A.2d 1302 (R.I. 1981)..........

*State v. Cipriano*, 430 A.2d 1258 (R.I. 1981)........................................................

*State v. Colangelo*, 55 R.I. 170, 179 A. 154 (1935)..................................................

*State v. Colvin*, 425 A.2d 508 (R.I. 1981)..........................................................................

*State v. Dordain*, 566 A.2d 942 (R.I. 1989)......................................................................

*State v. Evans*, 618 A.2d 1283 (R.I. 1993) .........................................................................

*State v. Fetzik*, 577 A.2d 990 (R.I. 1990) ..........................................................................

*State v. Figueras*, 644 A.2d 291 (R.I. 1994)......................................................................

*State v. Gomes*, 604 A.2d 1249 (R.I. 1992) ..........................................................................

*State v. Hockenhull*, 525 A.2d 926 (R.I. 1987).........................................................

*State v. Jalette*, 119 R.I. 614, 382 A.2d 526 (1978)..................................................

*State v. Kieon*, 175 A.2d 284 (R.I. 1961)..........................................................................

*State v. Lamphere*, 658 A.2d 900 (R.I. 1995) ...................................................................

*State v. Mastracchio*, 112 R.I. 437, 312 A.2d 190 (1973).............................................

*State v. Mazarella*, 103 R.I. 253, 236 A.2d 446 (1967)..................................................

*State v. McGuy*, 841 A.2d 1109 (R.I. 2003) ...................................................

*State v. Nunes*, 788 A.2d 460 (R.I. 2002) ..............................................................................

*State v. Peters*, 86 R.I. 447, 136 A.2d 620 (1957).........................................................

*State v. Pignolet*, 465 A.2d 176 (R.I. 1983)..........................................................................

*State v. Pratt*, 641 A.2d 731 (R.I. 1994)..........................................................................

*State v. Pugliese*, 117 R.I. 21, 362 A.2d 124 (1976) ......................................................

*State v. Raposa*, 100 R.I. 516, 217 A.2d 469 (1966) ....................................................

*State v. Rodriguez*, 822 A.2d 894 (R.I. 2003)..........................................................

*State v. Sabetta*, 680 A.2d 927 (R.I. 1996) ..........................................................................

*State v. Souza*, 202 A.2d 214 (R.I. 1972)........................................................................

*State v. Sundel*, 121 R.I. 638, 402 A.2d 585 (1979) ..........................................................

*State v. Tassone,* 749 A.2d 1112 (R.I. 2000) .....................................................................

*State v. Walsh*, 113 R.I. 118, 318 A.2d 463 (1979) ...........................................................

*State v. Yates*, 571 A.2d 575 (R.I. 1990)............................................................................

OTHER STATE CASES

*Commonwealth v. Legares,* 709 A.2d 922 (Pa. Super. 1997), *appeal denied,* 729 A.2d 1127 (Pa. 1998).............................................................................................

*Farmer v. State*, 698 A.2d 945 (Del. 1997) ........................................................................

*Huff v. State*, 544 So.2d 1143 (Fla. App. 1989).................................................................

*Romack v. State*, 446 A.2d 1346 (Ind. App.) .......................................................................

*Rowdean v. State*, 655 S.W.2d 413 (Ark. 1983) .................................................................

*Stanley v. State*, 398 A.2d 631 (Pa. 1979) ..........................................................................

*State v. Girolamo*, 496 A.2d 948 (Conn. 1985)...................................................................

*State v. Mills,* 351 S.E.2d 130 (N.C. App. 1986)................................................................

*State v. Morgan*, 340 S.E.2d 84 (N.C. 1986).......................................................................

*State v. Onofrio*, 425 A.2d 560 (Conn. 1979)......................................................................

MISCELLANEOUS

1A Wigmore, *Evidence*, §58.2 at 1212-13 (Tillers rev. 1983) ...............................................

## TRAVEL OF THE CASE

Indictment No. P1/2000-2878AG, filed in the Superior Court of Providence County on September 8, 2000, charged the appellant, Mariano Jimenez, with four offenses committed on April 9, 2000, to wit: the murder of Manuel Clemente, in violation of G.L. 1956 (2000 Reenactment) §11-23-1 (Count 1); a felony assault upon Clemente, in violation of §11-5-2 (Count 2); carrying a pistol without a license, in violation of §11-47-8 (Count 3); and possession of a firearm by a fugitive from justice, in violation of 11-47-5 (Count 4). Mr. Jimenez entered a guilty plea to Count 4, and elected to proceed to trial on Counts 1, 2 and 3.

A jury trial commenced in the Providence County Superior Court, Krause, J., presiding, on November 29, 2000, and continued on November 30, 2000, and December 1, 2000. On the latter date, the jury returned its verdicts, finding Mr. Jimenez guilty on all three counts. Justice Krause denied Mr. Jimenez' motion for a new trial on December 8, 2000; on February 9, 2001, Mr. Jimenez was sentenced to the mandatory term of life for first degree murder; to ten years suspended, ten years probation on Count 2; to ten years suspended, ten years probation on Count 3; and to a concurrent term of ten years to serve on Count 4.[1]

A timely notice of appeal to this Court was filed on Mr. Jimenez' behalf on the date of sentencing, February 9, 2001, and the transcript thereafter ordered. The appeal was docketed in this Court on December 12, 2003, and a waiver of participation in the prebriefing process was filed on December 23, 2003.

---

[1] The probationary terms on Counts 2 and 3 were imposed to run consecutively to the time to serve on Counts 1 and 4.

## STATEMENT OF FACTS

On the afternoon of April 8, 2000, at about 1:30 p.m., a small drinking party began in the apartment of Dania Alexandra Martinez (Dania), at 53 Dartmouth Street, in Providence, and continued until about 4:30 a.m. the next morning (Tr. 35, 48-49, 112). Ms. Martinez' sister, Altagracia Martinez (Altagracia) was present for most of the time, as was Dania's downstairs neighbor, Mariano Jimenez, and, for a brief period of time, Mr. Jimenez' sister, Maria Alvarado (Tr. 48, 114). In addition, a couple of other male friends of Dania's came and went during the course of the fifteen-hour long drinking spree (Tr. 48). By the wee hours of the morning, an intoxicated Mariano Jimenez was dancing and singing solo in Dania's living room; he had consumed approximately eighteen beers by that point (Tr. 130-31). Altagracia was too intoxicated to safely drive home, so a taxi was called for her (Tr. 133).

About two weeks prior to this party, Dania had ended a long live-in relationship with Manuel Clemente, who had been very violent toward her; Clemente moved out, but still had a key to Dania's apartment (Tr. 49-50, 62). Another neighbor, Yvette Mendez, testified that she had frequently heard fighting between Dania and Clemente, and that they both had bruises and black eyes at times (Tr. 44). Mr. Jimenez was aware of Clemente's violent history (Tr. I, 135).

Although Clemente had not been invited to this party, he and a friend showed up at around three in the morning (Tr. 58). Soon after he came, Mr. Jimenez, who was nervous to be around Clemente, left and went downstairs to his own apartment; after about twenty minutes, he called upstairs and Dania told him that everything was fine, and to come back up (Tr. 134-35). After Mr. Jimenez returned, while Clemente watched,

Dania pulled Jimenez up from his chair, and, in front of Clemente, the two laughed, talked, and danced (Tr. 137). Clemente began to argue with Dania as she danced with Mr. Jimenez, and eventually Clemente and Dania were yelling at each other (Tr. 137). Afterward, as Mr. Jimenez sat in a chair, Clemente pointed his finger at Jimenez in a threatening fashion, and then advanced upon him (Tr. 138). Mr. Jimenez asked Clemente why he was talking to him like that (Tr. 120).[2]

Mr. Jimenez testified that Clemente and his friend approached him in a menacing and threatening manner; as Clemente got very close, Mr. Jimenez became afraid (Tr. 137-38). Jimenez took out the gun that he had been carrying, cocked it, and pointed it up toward the ceiling, warning Clemente and his companion to stay away (Tr. 138-39). At this point, Mr. Jimenez said, he was slammed in the head, and lost his vision for a second or two; when he got his sight back, he said, someone was jumping on him, hitting him, and threatening to kill him (Tr. 139-41). At this point, Mr. Jimenez said, he tried to shoot his assailant; after a first shot missed, Jimenez tried to fire again, but his gun jammed (Tr. 141).[3] Altagracia corroborated Mr. Jimenez' testimony that Clemente attacked first (Tr. 116).

---

[2] Dania's police statement, like Mr. Jimenez' testimony, reflected that Jimenez had asked Clemente why he was talking like that; at trial, however, she said that it was Clemente who said this, and that her police statement had been wrongly translated (Tr. 60-61).

[3] Dania testified that she had positioned herself in between the two men when Clemente first advanced on Mr. Jimenez, who was seated, and that when Mr. Jimenez took out his gun, she grabbed his hands and tried to force the gun behind his back (Tr. 50-52). When the first shot went off, she testified, she ran out of the apartment and got into a waiting taxi – apparently the cab that had been called for Altagracia – and went to a pay phone and called the police (Tr. 52-53). Altagracia testified that Clemente attacked first, jumping on top of Mr. Jimenez and struggling with him (Tr.116). Altagracia testified that prior to the fight, Dania had been behind Clemente, not in between the men, and that she never saw her grab Jimenez' hands (Tr. 118).

The two men wrestled their way into the front hallway outside Dania's apartment.[4] Clemente kept threatening to kill Jimenez and would not release his hold on Jimenez' neck chain (Tr. 141-42). Finally, Jimenez was able to push Clemente off him; Clemente started down the stairs, yelling that he would be back, while Jimenez tried to clear the jammed gun (Tr. 144). Mr. Jimenez testified that, in his terrified state, he pulled out a jammed shell while his finger was still on the trigger, and the gun accidentally discharged (Tr. 144).[5] Clemente was struck by that bullet and fell (Tr. 144). Mr. Jimenez left the scene, but turned himself into the police later that afternoon (Tr. 144-45).

Dr. Michael Sikirica testified that Clemente died as a result of a single gunshot wound to the back of the neck, which traveled from back to front, upward to downward, and slightly right to left; the single bullet perforated the spinal cord, carotid artery and jugular vein (Tr. 75-78). Because of the absence of any tattooing or stippling, the doctor determined that this was not a close-range wound (Tr. 80). Dr. Sikirica also testified that Clemente had abrasions on his knuckles consistent with his having punched something (Tr. 81), and had a blood alcohol level of .154 (Tr. 82).

BCI Det. Roy Pearson testified that he responded to the scene and saw that a fight had obviously occurred in Dania's apartment: the apartment was in disarray, with

---

[4] After the first shot was fired, as the men wrestled toward the front door of the apartment and the hallway, Altagracia fled the apartment by the rear exit; she did not witness subsequent events on the front staircase (Tr. 120-21).

[5] Yvette Mendez, the upstairs neighbor, testified that she when she heard yelling and a "slam" from downstairs, she looked out her window and saw Dania getting into a taxi. After a few quiet minutes, she said, she heard people in the hallway, and went outside her apartment to investigate (Tr. 29-31). She said that she saw Jimenez holding Clemente and threatening to kill him (Tr. 31-33). According to her version, Jimenez then released Clemente, and cocked the gun and pointed it at him as Clemente ran (Tr. 33-34). The two men were out of her sight when she heard a shot go off (Tr. 34, 41), so she was not in a position to dispute Jimenez' testimony that he was attempting to clear the jammed shell when the weapon discharged.

furniture askew and beer bottles knocked over (Tr. 89, 96-97); in the kitchen were both a garbage bag and a box full of empty beer bottles; other liquor and beer bottles littered the kitchen and living room (Tr. 98-99). Det. Pearson found a groove in the hardwood floor from a bullet which had ricocheted and left a hole in the television screen (Tr. 91). Two spent shell casings were found, one about a foot away from the television and the other behind a chair (Tr. 91). One spent bullet was found on the hallway stairs, but no corresponding spent casing was found in the hallway or on the stairs (Tr. 102).

When Mr. Jimenez turned himself into the police station, he said, he expected to be released because the shooting had occurred innocently, after he had been attacked (Tr. 148, 162). He gave a statement detailing how Clemente had attacked him; how they had struggled in the hallway as Clemente had him by the chain; how, when Clemente let go, he said he would come back; and that "at that moment the gun went off" and Clemente was shot (St. Exh. 12). Mr. Jimenez' left ear was lacerated, and Det. Pearson took photographs of his injuries (Tr. 101, 167).

V. ARGUMENT I

**THE TRIAL JUSTICE COMMITTED A CLEAR AND REVERSIBLE ERROR WHEN HE FAILED TO INSTRUCT THE JURY THAT DIMINISHED-CAPACITY MAY REDUCE THE CRIME TO A LESSER INCLUDED OFFENSE; THIS ERROR WAS HARMFUL TO THE DEFENDANT BY OPERATING TO DENY HIM A BASIC FUNDAMENTAL FAIR TRIAL, IN VIOLATION OF U.S. CONST. AMENDS. V, XIV AND R.I. CONST. ART. I, SEC. 10.**

A. In the instant case, the trial judge failed to properly instruct the jury on the element that its incorporated with the use of a defense of diminished capacity. See, attached as exhibit J5. Tr. supra. It is well established practice in Rhode Island that by virtue of the doctrine of diminished capacity invokes a lesser included offense instruction when the evidence demonstrates that conclusion. Where, as here, the defendant was charged with multiple assaults stemming from the same conduct and incident.

At bar, the defendant was indicted for R.I.G.L. statute 11-5-1; Assault with intent to murder; and 11-5-2 assault with a dangerous weapon; and 11-5-4 assault with a dangerous weapon in a dwelling house with the intent to murder; and assault resulting in serious bodily injury 11-5-2. See, State v. Dordain, 566 A.2d 942 (R.I. 1989) The statutory authority for a conviction of a lesser offense included within the indictment of a greater offense is found in G.L. 1956(1981 Reenactment) 12-17-14. * * * With specific regard to this appeal, defendant contends that under both 12-17-14 and Rule 31(c), assault with a dangerous weapon is a separate offense and, therefore, the trial justice should not have instructed the jury to consider it within the charge of assault with intent to murder. However, this

court held, in State v. Raposa, that "to charge one with assault with intent to murder is to charge by necessary implication that the assault was or could have been committed through the use of some instrument or device capable of causing death or substantial bodily injury." supra. In State v. Infantolino, 355 A.2d 722 (1976). Because there is sufficient authority for a jury instruction on a lesser included offense to the crime charged, defendant is effectively put on notice of the possible conviction of a lesser offense supported by the evidence, and may adequately prepare a defense. State v. Sundel, 402 A.2d at 590. Furthermore, the required instruction on a lesser included offense is for defendant's own protection. This court in Hockenhull, pointed out that "absent such an instruction, a jury may erroneously convict a criminal defendant of the principal offense charged, despite the prosecution's inability to prove an element of that offense, when the jury is convinced that defendant's conduct was criminal." 525 A.2d at 930.

Where, as here, the trial justice allowed the jury to deliberate on multiple charges as if they were separate offense while each offense stemmed from the same conduct. When defendant is indicted for the greater offense, the lesser is included as the same offense, and the jury must be instructed to the effect that defendant cannot be perceived as committing more then one offense.

In State v. Hockenhull, 525 A.2d at 930 (1987) In the case at bar the applicable form of manslaughter raised by the factual issues

is that of voluntary manslaughter reduced from the crime of murder by virtue of the doctrine of diminshed capacity, under which severe intoxication resulting from the ingestion of alcohol and drugs precludes the formation of a specific intent to kill.

B. In this case the trial justice determined that an instruction on diminshed capacity was warranted by the evidence, but he failed to instruct the jury properly on the lesser included offense of voluntary manslaughter by reason of diminished capacity. General Laws 1956 (1985 Reenactment ) 8-2-38 requires a trial justice to instruct the jury in the law that must be applied to issues raised by the parties in order to secure a fair trial. See, exhibit J5. Supra.

At bar, Once the trial justice was satisfied that the evidence presented by the defense met the mininum threhold he instructed the jury to consider diminish capacity as element to negate the required specific-intent. The trial justice failure to instruct on the element of lesser included offense erode the verdict since the jury was allowed to return a verdict that was not authorize in its instruction to find a guilty finding.

id. Hockenhull, We have repeated stated that a criminal defendant is entitled to an instruction on a lesser included offense if such an instruction is warranted by the evidence. State v. Lemon, 497 A.2d 713 (R.I. 1985); State v. Kaner, 463 A.2d 1348 (R.I. 1983); State v. Austin, 462 A.2d 359 (R.I. 1983). As a matter of practice

we require that a lesser included offense instruction be given when warranted on account of the danger that, absent such an instruction, a jury may erroneously convict a criminal defendant of the pricipal offense charged, despite the prosecutor's inability to prove an element of that offense, when the jury is convinced that defendant's conduct was criminal. As Justice Brennan aptly stated in Keeble v. United States, 93 S.Ct. 1993 (1973);

> [I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecutor has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal ***.

As suggested in Keeble, the instruction by the trial justice that the jury's choice was between a verdict of guilty of murder and a verdict of not guilty did not give them the intermediate alternative of a finding of guilty of the lesser included offense of manslaughter.

C. In the instant case, For the defendant to have been indicted on only the greater offenses belittles R.L.G.L. statute 12-17-14; and RI Sup. R. Crim. P. Rule 31(c).

In John Macaruso v. Louis Macaruso, 190 A.2d at 16-17 (R.I. 1963) A justice of the superior court presidering over a jury trial

in that court by statute is required to "instruct the jury in the law relating to the same..." G.L. 1956, 8-2-38. The statute is mandatory and clearly contemplates that juries shall be given correct instructions as to those rules of law that of necessity must be applied to the issues raised at a trial in order to secure to the parties a fair trial.

State v. Milazzo, 358 A.2d at 37 (R.I. 1976) It follows that the trial justice was obligated to instruct the jury on this element of the alleged offense. The duty flows from 8-2-38, which says in part:

> "In every case, civil and criminal, tried in the superior court with a jury, the justice presiding shall instruct the jury in the law relating to the same...This statue is mandatory. The failure of defendant in the instant case to request a prepared instruction on this issue prior to the charge does not excuse the trial justice from this obligation, so long as defendant objected to the failure to so charge."

State v. Goff, 267 A.2d at 688 (R.I. 1970) The defendant contends that the trial justice erred prejudicially in instructing the jury concerning the return of a verdict of manslaughter. "It is to be noted, first, that the record discloses that defendant had made no request for an instruction on manslaughter." This, however, does not relieve a trial court from giving whatever instruction may be made necessary by the state of evidence. In this state a statute, G.L. 1956 (1969 Reenactment) 8-2-38....We have held this statute to be mandatory...Where the evidence would support such a verdict, an instruction thereon must be given under the statute even though not requested. State v. Prescott, 40 A.2d 721.

VI.

## ARGUMENT II

**THE TRIAL JUSTICE COMMITTED A CLEAR AND EGREGIOUS ERROR OF WELL ESTABLISHED LAW. WHEN HE FAILED TO INSTRUCT THE JURY ON THE EVIDENCE THAT INCORPORATES A LESSER INCLUDED OFFENSE THEORY BY USE OF DIMINISHED CAPACITY. THE FAILURE TO INSTRUCT VIOLATES, R.I.G.L. 8-2-38; R.I.G.L. 12-17-14; AND SUP. CT. R. CRIM. P. RULE 31(c). A REVERSAL OF ERROR IS REQUIRED TO PRESERVE THE CASE LAW.**

A. In the instant case, the trial justice determined that a diminished capacity instruction was warranted. See, exhibit J5. Supra. To have charged the defendant with a greater offense without charging a lesser offense within the indictment violate the use of a diminished capacity defense, this allowed the jury to return a verdict without and instruction. See, Hockenhall, supra.

Ball v. United States, 105 S.Ct. at 1675 When multiple charges are brought, the defendant is put in jeopardy as to each charge. To retain his freedom, the defendant must obtain an acquittal on all charges; to put the defendant in prison, the prosecution need only obtain a single guilty verdict. The prosecution's ability to bring multiple charges increases the risk that the defendant will be convicted on one or more of those charges. The very fact that a defendant has been arrested, charged, and brought to trial on several charges may syggest to the jury that he must be guilty of at least one of those crimes...The submission of two charges rather than one gives the prosecution the advantage of offering the jury a choice...a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence.

9/4/08