Street the following morning to prepare to go to the hospital. While there she was informed by the Central Falls police that the Providence police wanted to talk to her, and at the police station she learned that the child had died during the night. She testified that she saw defendant at the Pawtucket police station and that he admitted that "he had killed my boy."

The medical testimony, given principally by Dr. Salvatore Allegra, indicated that the child had suffered many severe internal injuries and that the death was caused by "Multiple contusions with extensive injuries of internal organs." The medical testimony further indicated that "The injuries were inflicted through a series of violent blows to the body of this child" which could have resulted from "punching as well as kicking in this particular case." The opinion of the medical witness was that the condition of the body was the result of "a very violent protracted ruthless beating" involving as many as 60 or 70 blows, that the injuries were not consistent with a fall down a flight of stairs and that there were "70 different ecchymoses" over all the body.

After being taken into custody by the police, defendant persisted, at the Pawtucket police station, in his assertion that a boy about seven years of age had beat up Anthony. However, upon being confronted by the mother, he orally admitted that he had punched him several times about the body. A written statement was taken which was subsequently admitted into evidence.

In the statement defendant admitted that he had been taking care of Anthony and that he had called him into the house to watch a TV program. He stated that Anthony had started to fool around and that he had hit the boy a couple of times in the chest with the back of his hand. He further stated that another youngster wanted Anthony to go out to play, and that he had refused to allow him to do so. At this, Anthony started to stamp his feet, ran around a table knocking over a kitchen chair, and "I got mad." He stated further that he grabbed him by the arm in the kitchen, took him into the parlor and sat him down on the couch. "I started hitting him. I closed my fist, my right fist, and punched the kid all over his body several times." In answer to a question as to why he had punched Anthony, he replied: "Because he had kicked me and wanted to go out." In testifying at trial, however, he completely repudiated the statement given to the police and claimed that the mother had inflicted the bruises upon Anthony's body by hitting him with her pocketbook and knocking him down a flight of stairs.

[1] The defendant contends that the trial justice erred prejudicially in instructing the jury concerning the return of a verdict of manslaughter. It is to be noted, first, that the record discloses that defendant had made no request for an instruction on manslaughter. This, however, does not relieve a trial court from giving whatever instruction may be made necessary by the state of the evidence. In this state a statute, G.L.1956 (1969 Reenactment) § 8-2-38, requires a trial justice in every civil or criminal case tried to a jury in the Superior Court to "instruct the jury in the law relating to the same * * *." We have held this statute to be mandatory and to contemplate that juries should be given correct instructions as to those rules of law that of necessity must be applied to the issues raised at trial. Macaruso v. Massart, 96 R.I. 168, 190 A.2d 14.

[2] It has been long held in this state under our statute that a defendant is not entitled to a charge on a lower degree of homicide when the evidence would not sustain a finding of the lesser degree of the offense. However, where the evidence would support such a verdict, an instruction thereon must be given under the statute even though not requested. State v. Prescott, 70 R.I. 403, 40 A.2d 721; State v. Hathaway, 52 R.I. 492, 161 A. 366. This view appears to prevail more or less generally throughout the country. Mock v.



State, 2 Md.App. 771, 237 A.2d 811; State v. Crosby, 124 Vt. 294, 204 A.2d 123; People v. Morris, 90 Ill.App.2d 208, 234 N.E.2d 52.

In the instant case the contention of error made by defendant appears to rest on the fact that the trial justice instructed the jury, in effect, that it could not return a verdict of manslaughter on the evidence in this case. In the course of instructing the jury, the court discussed murder in both first and second degrees and talked about malice aforethought. In so doing, the court stated expressly: "If you don't have malice aforethought, the offense is merely manslaughter. This is not a case of manslaughter, ladies and gentlemen." We are presented, then, with the question of whether the evidence in this record would support a verdict of manslaughter and, therefore, require an instruction thereon.

[3-5] Manslaughter is unlawful homicide without malice aforethought, either express or implied, and the element of malice aforethought must be absent or a homicide will, by definition, be murder. The absence of malice in manslaughter distinguishes it from any degree of murder, and it is to be noted that manslaughter is a distinct offense and not a degree of murder. In 1 Wharton's Criminal Law and Procedure, § 274, at 580, voluntary manslaughter is defined as follows: "Voluntary manslaughter is generally the felonious and intentional killing of another without malice aforethought, in a sudden heat of passion caused by adequate legal provocation."

[6] We recently, in State v. Winston, R.I., 252 A.2d 354, citing State v. Smith, R.I., 93 A. 1, declared that whether a crime is to be classified as murder or manslaughter depends on whether the killing was done with malice aforethought, express or implied, which is an essential characteristic of murder, or whether it was committed under the influence of sudden passion produced by adequate provocation, which would reduce the crime to manslaughter. In short, then, the controlling question, in our opinion, in this case is whether Anthony's conduct was sufficient to constitute adequate legal provocation for the actions of defendant. It is our opinion, then, that to have warranted the jury to return a verdict of manslaughter in this case and thus require an instruction on manslaughter therein, it would have to appear from the record that there was evidence that Anthony's death occurred during the heat of defendant's passion, which in turn had been caused by reasonable provocation.

[7] It is our opinion that nothing in the record constitutes evidence that in law would amount to adequate or reasonable provocation so as to require an instruction on manslaughter. There is in the record a statement admitted as State's Exhibit 9 which was given by defendant at the Pawtucket police station on September 24, 1967. In the statement defendant said that he had taken Anthony to his home on Sherman Street and told him to play in the yard. Some minutes later he had called Anthony into the house to watch a TV program, and Anthony had come in.

Thereafter, in response to a question as to what he did after Anthony came into the house, he answered, in substance, that he was watching TV in the parlor, and Anthony sat on a couch, and that "Anthony started fooling around by jumping up and down the couch and I told him Anthony be quiet and watch TV. He stopped for a few minutes started fooling around again. I walked over to him, Anthony was on the couch and I hit a couple of time in the chest with the back of my hand. He stopped. There was a knock on the door from the kid upstairs who wanted Anthony to go out and play. I said then 'he can't go out'. Anthony said he wanted to go out. He started to stamp his feet on the floor, run around the table, knocked over a kitchen chair and I got mad."

Under further questioning, he said: "I grabbed him by the arm in the kitchen and took him into the parlor. I sat him down on the couch. I started hitting him. I

closed my fist, my right fist, and punched the kid all over his body several times." He further stated that he had continued punching Anthony for a couple of minutes. He went on to say that he did not know how hard he had punched Anthony, but when asked why he had started punching Anthony when he took him into the parlor, he said: "Because he had kicked me and wanted to go out."

In other words, the only evidence in the record bearing on the question of the provocation which induced defendant to savagely beat Anthony was during the time when the boy wanted to go out to play, and this amounted to only having kicked defendant and run around the table, tipping over a chair. It is, in our opinion, clear that this evidence in law would not support a verdict of provocation sufficient to reduce the homicide to manslaughter, and we find no error in the trial justice's instruction that the case did not involve manslaughter.

The defendant excepts also to that portion of the charge in which the court said: "I believe that altogether we heard from eighteen witnesses, some contributed very little, some contributed a great deal, some had no interest in the outcome of this case." The defendant, as we understand him, is arguing that the court thus placed improper emphasis on his interest in the outcome of the case and, in so doing, was attempting to persuade the jury that those witnesses who testified without a direct interest in the outcome were more worthy of belief than those who had an interest. He appears to concede that it is within the province of the jury to weigh the interests of witnesses when evaluating their testimony, but contends that here the trial justice was informing the jury, by inference at least, that because of his interest in the outcome his testimony was not as worthy of belief as that of the disinterested witnesses.

[8] If the challenged portion of the charge could be reasonably construed as having singled out the testimony of defendant for unusual scrutiny and to suggest to the jury that the trial justice was questioning defendant's credibility, the instruction would be erroneous. It is settled that a trial justice invades the province of the jury when he expresses an opinon on credibility or conveys to the jury his impression of the weight that they should give to any of the testimony. State v. Harris, 89 R.I. 202, 209–210, 152 A.2d 106, 110–111.

[9] Whether the language of the challenged instruction as given by the trial justice invaded the province of the jury is to be determined by how it would have been understood by an ordinarily intelligent lay person sitting with a jury when delivered by the court. State v. Reid, 101 R.I. 363, 366, 223 A.2d 444, 446–447. In State v. Hull, R.I., 258 A.2d 791, 793, we said that such a charge is to be judged "* * * not by how we as a reviewing court read the challenged instruction from the printed page, but on how ordinarily intelligent lay persons sitting in a jury box would have understood it, as they listened to it within the context of the whole charge at the close of the trial."

[10] We are unable to conclude, after examining this charge in the context in which it was delivered, that the trial justice invaded the province of the jury by inferring that the credibility of defendant had been impaired by his obvious interest in the outcome of the case. We think that ordinarily intelligent jurors, upon hearing what the trial justice had to say here, would not have gathered therefrom that he was impeaching the credibility of the defendant, but rather that they would consider themselves instructed to consider the interests of all witnesses in the outcome of the trial, those for the prosecution as well as those for the defense. We see no error in this portion of the charge as given.

[11] The trial justice in his charge referred to the mother of Anthony and her role in the case when he said: "This is not a case against Janice Ferrucci, she is not on trial here, except as you may think she is on trial as a credible witness; and I leave that to you to determine as to the testimony given by her, along with the way you would evaluate all of the other witnesses in this particular case." The defendant contends that he was inferentially prejudiced, at least, by this comment of the court.



The defendant appears to argue that, in so doing, the trial justice was expressing his own opinion as to the weight of the evidence. We are unable to agree, perceiving nothing in the charge that stated an opinion that Janice Ferrucci should be believed or that she was more credible than any of the other witnesses. To the contrary, the trial justice clearly left it to the jury to determine the credibility of Janice Ferrucci's testimony and the weight to be given to it. We see no error in this instruction.

[12] The defendant also prosecutes an exception to that portion of the charge in which the court summed up the evidence as to the various manners in which the child could have met his death. What the trial justice did, in our opinion, was to sum up the evidence which related to the injuries sustained by the child. We cannot agree that the trial justice was eliminating any of the possible causes of death in this charge. To the contrary, we think that an ordinarily intelligent person sitting on the jury would simply understand this language to be presenting him with the issues in the case. We perceive no error in this summation.

[13] The defendant also prosecutes an exception to the action of the court in admitting into evidence State's Exhibits 2, 3, 4, and 5, all of which were photographs of the body of Anthony purporting to show the bruises and injuries sustained prior to his death. While the defendant apparently did not press this exception in this court, we are of the opinion that no error inhered in the admission of these photographs. In State v. Winston, R.I., 252 A.2d 354, 356, we held that photographs of the victim in a prosecution for homicide, which are shown to be faithful representations of the victim at the time in question, are, in the discretion of the trial court, admissible into evidence. In that case we took the view that they are an appropriate and proper aid to the jury in arriving at an understanding of the evidence as proof of the corpus delicti, the extent of the injury, the condition and identification of the body, or for their bearing on the question of the degree of atrociousness of the crime.

We are unable to perceive that there was any abuse of discretion in admitting the photographs here for the purposes referred to above. In State v. Winston, *supra*, at 356–357, we said: "The fact that a picture may depict the details of a shocking crime is no reason to bar its use. While this court will not countenance the use of photographs whose sole purpose is to inflame a jury, defendant has failed to show us that the use of the disputed evidence amounted to an abuse of the trial justice's discretion." We think the language used in that case applies with equal propriety to the exception being considered here. We find that no error inhered in the admission of these photographs.

All of the defendant's exceptions are overruled, and the case is remitted to the Superior Court for further proceedings.